IN THE DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADAM MOORE,
                Plaintiff,

v.                                                   Case No. 2:24-cv-2569

UNIFIED SCHOOL DISTRICT
253, EMPORIA,
                Defendant.

## **COMPLAINT**

The Plaintiff, by and through undersigned counsel, states as and for his Complaint in this action as follows:

### PARTIES, JURISDICTION AND VENUE

1. The Plaintiff, Adam Moore, is and, at all relevant times was a resident of the state of Kansas.

2. Unified School District 253, Emporia, is a public school district that is located at 1700 W. 7th Avenue, Emporia, Kansas 66801 and may be served with process pursuant to K.S.A. 60-304(d)(4) through its clerk or secretary or any of its officers, directors or managers. The school district is a governmental entity created to provide public education to children within its boundaries.

3. This Court has jurisdiction over this action for federal question actions, including 42 U.S.C. §2000e—2(a)(1) and 2(a)(2) (Title VII). pursuant to 28 U.S.C. § 1331.

4. Venue is properly placed with this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiff's claims occurred in this judicial district.

5. The Plaintiff received a notice of right-to-sue from the U.S. Equal Employment

1

Opportunity Commission that was dated September 13, 2024, based on a Charge of Discrimination he filed with that agency. The Plaintiff has exhausted his administrative remedies and this action is timely filed.

## ALLEGATIONS OF FACT

6. Moore began his employment with U.S.D. 253 in August of 2021 as a faculty member at Emporia High School**.** He taught Communication Arts, Forensics, Public Speaking and was the coach of the Debate team.

7. On February 24, 2023, Moore met with a student who was on the Debate team.

8. The student planned to leave the Debate team because he was failing three of his eight classes.

9. The student wanted to remain on the Debate team; Moore thought he could help the student become better organized.

10. When the student arrived Moore and the student went to the Debate practice room, Moore printed out a calendar and the two went through the upcoming weeks to mark classes and activities.

11. Brett Krambeer, one of Moore's assistant Debate coaches arrived during the meeting to collect keys from Moore that the Debate tournament to be held the next days.

12. The student arrived for the meeting with Moore at about 4:00 p.m. and left around 7:30 p.m. Moore left the school building between 8:00 p.m. and 8:30 p.m.

13. Moore later told another assistant Debate coach, Liberty Belote, that the meeting had lasted "forever" and that he wished the student had left earlier.

14. During the week of March 6, 2023, Roxanna Peraza, who was a Title IX coordinator

for the High School told Moore that the student he had met with on February 24, 2023 would not remain on the Debate team and that the student would be dropped from all but three of his classes.

15. In the same week, the student's best friend qualifies for a national tournament.

16. The student's best friend then sent Moore a series of very rude emails and stated that he did not think Moore recognized his successes enough.

17. A few days later, during a fundraising event the same week, the student who met with Moore and that student's best friend contact other students on the team who are fundraising. Those two students asked Debate team members whether they knew about drama/gossip on the team that had occurred and whether they knew if Moore had been "talking shit" on them behind their backs.

18. Unbeknownst to Moore at the time, the student he met with in February made a Title IX complaint against Moore with his academic counselor. The claims in the complaint relate to the meeting he and Moore had on February 24, 2023.

19. The counselor contacted the principal Dathan Fischer, who then contacted the human resources director, Jared Giffin. They verify accuracy of the timeline the student provided by reviewing the video made by cameras in the school.

20. The student made numerous false accusations to support his Title IX complaint.

- The student claimed that Moore discussed another student who Moore "believed to be bisexual." The student had come out with his sexual identity months before the meeting. The student claimed that Moore had stated the other student "believed had a crush on [Moore]." The student claimed that Moore had often referred to the student as "cute." The student claimed that Moore had discussed this with the Orchestra teacher, Riley Day and had asked Day, "can you imagine if he were to act on that?" All of this is false.

3

- The student claimed that Moore placed his hand on his knee and upper thigh area and began rubbing it. Student also claimed that Moore held his hands for roughly twenty seconds. The student claimed that Moore rubbed his leg against the student's leg under the table where they sat. The student claimed that Moore was actively trying to discourage him from leaving. The student claimed that Moore had made lewd and sexual jokes and had told the student to "hit me up" after he graduated. All of this is false.

21. On March 21, 2023, Principal Fischer called Moore to his office. When Moore arrived human resources director Giffin was present with Fischer. The two told Moore that he was being placed on paid administrative leave because of "concerns about my conduct." The two gave Moore a letter about the leave, that directed Moore not to do any work for the school district and that directed him to stay off school district property until further notice.

22. When Moore asked what were the concerns about his conduct, Giffin replied "I can't tell you.

23. Although Fischer and Giffin told Moore that no one outside of administration would know about what was going on, most of Moore's department faculty had contacted him by the following morning.

24. On March 23, 2023, Moore's department chair, Tara Trear told Moore that she knew which student had made the Title IX complaint against him. She stated that the student was walking down the hallway and stopped by to see the Librarian, Dana Cole. He asked Cole whether she "had heard what [he] had done to Mr. Moore?" When she replied that she had not he placed his phone on her desk where she could read the allegations made against Moore. Cole declined to read the allegations. The student then told Cole that he needed to go find others with their own stories about

Moore and those who would corroborate his story. Cole reported this to assistant principal, Sheryl Leeds, who was in charge of Title IX enforcement at the high school.

25. On March 27, 2023, human resources director Giffin called Moore to inform him that there was a Title IX investigation under way and that this was the reason for the paid administrative leave. Giffin then told Moore that that had been a second complaint filed against Moore on March 26, 2023. Giffin told Moore that he would receive notice of the first and second complaints within days. Giffin stated that an outside agency from Kansas City had been contacted to handle the investigations and that Moore would be contacted within the next few weeks.

26. After the phone call from Giffin, Moore contacted the Kansas affiliate of the National Education Association to seek legal representation.

27. On March 28, 2023, the head coach of Debate team at Maize High School sent a text message to Moore offering support for anything Moore needed. That coach stated that he had seen a post on Twitter or "X" by the student who made the first complaint against Moore. That post stated in part, "RIP Emporia Debate?" It became apparent to Moore that the allegations against Moore had been sent around the entire school.

28. In mid-April, 2023, Moore sat for his first interview, by Zoom, with an investigator from the law firm Lathrop GPM named Dion Farganis.

29. In mid-June, 2023, Moore is notified that he will receive transcripts of the first round of interviews. Moore is required to sign a non-disclosure agreement. Moore's understanding was that the students who made the complaints were also required to sign a non-disclosure agreement.

30. Also in mid-June, 2023, Moore learns that the student who made the second complaint

against him had accused Moore of harassing him while that student was Moore's teacher aide beginning in September of 2022. This student requested to continue as Moore's teacher aide for the semester beginning in January of 2023, despite the supposed harassment.

31. In the first week of July, 2023, Moore received a first set of interview transcripts for the first Title IX complaint. Many of the incidents recited by the student's best friend do not match up with the description of the events given by the student.

32. One witness for the first Title IX complaint was Roxanna Peraza, who falsely claimed that she had a conversation with Moore and told him that a harassment claim had been made against him on March 3, 2023. She claimed that she told Moore to "back off" from a student.

33. In August, 2023, a second round of interviews begins for the first Title IX complaint.

34. In September, 2023, the second Title IX complaint ends in Moore's favor. The student who made that complaint stated that he never wanted a Title IX investigation to happen and requested that his parents never be informed of its existence.

35. Moore learns at about this time that Peraza was serving as the advisor for the student who made the second Title IX complaint while also being interviewed for the first Title IX complaint. She also served as Title IX Coordinator for the high school.

36. Also in September, 2023, Leeds and Peraza presented Title IX training to all staff and faculty. One teacher who attended the training told Moore that Peraza gave instruction that included references to the false allegations made by the student who made the second Title IX complaint.

37. In October, 2023, Moore sent an email to Farganis asking for an update on the

investigation of the first Title IX complaint. He received an automatic response that stated that Farganis was no longer with Lathrop GPM. Moore contacted Giffin, who told Moore that Farganis had finished his work on the case.

38. Also in October, 2023, the second round of interviews ends. One witness interviewed was the girl friend of the student who made the first Title IX complaint. She falsely claimed that Moore frequently made fun of her and the complaining student's relationship in front of classmates. The girl friend claimed that the first complaining student had discussed his allegations against Moore with her and with a group of his friends before he made his complaint.

39. Another witness in the second round of interviews was Kacie Hastings, the Theater teacher. She told Moore after the interview that Farganis had told her not to contact Moore, later described him as "threatening" and that he made her feel uncomfortable when trying to answer his questions.

40. Another witness in the second round of interviews was the Librarian, Cole. She stated that the student had been successful in recruiting another student to make an accusation against Moore.

41. On November 19, 2023, Moore received an email from a decisionmaker stating that she had requested more information and had appointed a new investigator to conduct more interviews.

42. In December, 2023, the third round of interviews ends. Moore raised questions about the authenticity of text messages because the first complaining student did not have any text messages from his girl friend until after he made his Title IX complaint.

43. In January, 2024, the investigation of the first Title IX complaint ends with mixed

7

findings. Allegations before February 24, 2023, were not proven "more likely than not" to have occurred. Allegations after February 24 are found to be more likely than not true in a blanket, non-specific way.

44. The findings of the investigation of the first Title IX complaint were riddled with inconsistencies, procedural irregularities, twisting of witness statements to support allegations against Moore, and did not given credit to Moore for some statements.

45. Moore learns later that the school district fired him on January 9, 2024.

46. Moore appealed the termination decision in February of 2024. The decisionmaker for the appeal ruled against him.

47. Moore discovered this his teacher contract had been fully terminated on February 29, 2024 after the appeal decision.

48. Moore and his counsel from KNEA requested a hearing before the school district board. In a meeting on March 12, 2024, after three executive sessions, the Board left the meeting room following a vote on a document that was not shown to Moore and his counsel. The Board President handed Moore a letter of termination.

49. Moore never had the opportunity speak with anyone at U.S.D. 253 about the allegations against him. No one with U.S.D. 253 ever asked him for his side of the story.

50. The day after the Board meeting, the student, two of his best friends, his father and his mother all post comments about Moore on Facebook that describe him as a "predator," "groomer," and other derogatory names. The student's mother attempted to "friend" him on Facebook.

51. In April, 2024, Moore is named in a Notice of Claim filed by the student and his family. Moore has not received any update on the Claim.

52. Moore has been a homosexual male his entire adult life. His sexual preference was

widely known in Emporia partly as a result of him acting as the faculty representative for an LGBTQ group at Emporia High School.

## COUNT I
## TITLE VII – SEX DISCRIMINATION

53. The Plaintiff hereby incorporates by reference Paragraphs 1 through 52 above as though fully set forth herein.

54. The Plaintiff is a member of a protected class, specifically, homosexual males.

55. The Plaintiff was qualified for the position he was performing and was performing his job satisfactorily.

56. The Defendant intended to discriminate against the Plaintiff on the basis of the Plaintiff's sex.

44. The Defendant terminated the Plaintiff under circumstances giving rise to an inference of sex discrimination, all in violation of 42 U.S.C. §2000e—2(a)(1) and 2(a)(2) (Title VII).

45. The Plaintiff's sexual preference was a but-for cause of the termination of the Plaintiff from the Defendant's employment.

46. The Plaintiff's sexual preference was a motivating factor in the termination of the Plaintiff's employment with the Defendant.

47. The Plaintiff has sustained damages resulting from the Defendant's conduct.

WHEREFORE, the Plaintiff requests the Court to enter a judgment in his favor against the Defendant for back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, an award of front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, for punitive damages, for pre-judgment interest, for reasonable attorney fees, for costs, all in excess of $75,000.00 and for such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

*/s/ Theodore J. Lickteig*
Theodore J. Lickteig #12977
Lickteig Law Firm, LLC
12760 W. 87th Street, Suite 112
Lenexa, Kansas 66215
913-894-1090
tjllawoffice@planetkc.com
*Attorney for Plaintiff*

## JURY DEMAND

The Plaintiff, Adam Moore, by and through counsel, hereby demands a jury on all issues so triable.

Respectfully submitted,

*/s/ Theodore J. Lickteig*
Theodore J. Lickteig #12977
Lickteig Law Firm, LLC
12760 W. 87th Street, Suite 112
Lenexa, Kansas 66215
913-894-1090
tjllawoffice@planetkc.com
*Attorney for Plaintiff*